786 F.2d 888
 UNITED STATES of America, Appellee,
v.
Donald J. McGAULEY, Appellant.
 No. 85-1628EM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 16, 1986.
Decided March 26, 1986.
 
 1
 Cornelius T. Lane, Jr., St. Louis, Mo., for appellant.
 
 
 2
 Richard L. Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.
 
 
 3
 Before McMILLIAN, JOHN R. GIBSON, Circuit Judges, and MURPHY,* District Judge.
 
 
 4
 DIANA E. MURPHY, District Judge.
 
 
 5
 Donald J. McGauley appeals from a judgment of conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1). He contends that the trial court[1] should have suppressed the cocaine seized and the statements he made upon arrest because he was not given timely Miranda warnings and probable cause did not exist for either his arrest or the search of his suitcase. Appellant further argues that the trial court erred by commenting on his right not to testify, refusing to allow him to call a prosecutor as a witness, and denying his motion for judgment of acquittal. We affirm.
 
 I. BACKGROUND
 
 6
 On September 26, 1984, the dispatcher for the Lambert Airport Police Department in St. Louis, Missouri, received a series of calls from Mary Ellen McGauley, appellant's wife. She asked that the calls be treated anonymously, and her identity was not made known by the dispatcher. She stated that her husband would be coming to the airport to pick up a suitcase containing cocaine which would be arriving on Ozark flight 674 from Miami, Florida. She described her husband and stated that he would be wearing gray pants, a blue or black blazer, gray shoes and a gold ring bearing the initials "DM". She also described the suitcase that he would pick up and the make and license number of the car he would drive. The dispatcher conveyed the information to the Airport Police, the St. Louis County Police, and the Drug Enforcement Agency (DEA).
 
 
 7
 Detective Blois of the Airport Police went to the baggage carousel for Ozark Flight 674 and began surveillance with Detective Guy Penn of the St. Louis County Police Department and DEA Special Agents Archie Luss, Jr. and Vernon Ankton. The officers observed appellant pick up a suitcase from the Ozark baggage carousel and proceed to a parking lot where he opened the trunk of a cream-colored Cadillac. Appellant, the suitcase, and the Cadillac all matched the description given to the dispatcher.
 
 
 8
 The officers then approached appellant and identified themselves. They asked appellant who he was and whether he was the owner of the suitcase. Appellant identified himself as Donald McGauley and said that he had not been a passenger on flight 674. He said he was picking the suitcase up for a friend and produced the claim check. After appellant told the officers that he did not know who the friend was, they took possession of the suitcase and asked McGauley to accompany them to the police station in the airport.
 
 
 9
 Enroute to the station, appellant volunteered more information. He stated that he had gotten a call from a friend who asked him to pick up the suitcase at the airport. He was to receive $100 for his help.
 
 
 10
 Upon arrival at the station, appellant was given his Miranda rights. He then stated that he was called at home by an anonymous individual who directed him to go to the airport and pick up a bag. He said that he was to be met by a person dressed as a cab driver and that he was to take the bag back to his home and wait. The officers then inventoried appellant's personal property. It contained a piece of paper with the Ozark flight information, as well as $1826 in U.S. currency. Of this amount, $1600 was in $100 denominations.
 
 
 11
 Later that day, Special Agent Lozano took a further statement from McGauley who essentially repeated his last story but added that he had been told to take the suitcase to a location in St. Louis County. He could not identify the caller, the location where he was to take the suitcase, or the cab driver.
 
 
 12
 Appellant's suitcase was then taken to St. Louis County Police Headquarters where a specially-trained police dog detected the presence of narcotics. Detectives Blois and Penn obtained and executed a search warrant for the suitcase. 525.96 grams of 86% pure cocaine were found inside.
 
 
 13
 At trial, appellant did not offer any evidence, but he sought to call George Westfall, St. Louis County Prosecutor. Appellant offered to prove that Westfall would testify that Detective Guy Penn had resigned from the police department in exchange for a promise not to prosecute him for perjury involving drug cases handled in St. Louis County. Penn had been part of the surveillance team at the airport and had been involved in the search warrant application and execution, but the government had not called him as a witness. The trial court excluded Westfall's testimony.
 
 II. DISCUSSION
 
 14
 a. Validity of Arrest
 
 
 15
 Appellant contends that the seized cocaine and his statements should have been suppressed because they were obtained incident to a warrantless arrest without probable cause. Probable cause to make a warrantless arrest depends upon whether, at the time of McGauley's arrest, the agents had knowledge of sufficient facts and circumstances to cause a prudent person to believe that appellant had committed or was committing an offense. See Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). If the agents had probable cause, the warrantless arrest was lawful and the cocaine and statements obtained were properly received in evidence at trial. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
 
 
 16
 Hearsay information, obtained from an undisclosed informant, may supply the probable cause necessary for lawful arrest. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). This is especially true when the informant's tip is corroborated by police officials. See, e.g., Illinois v. Gates, 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983).
 
 
 17
 In the instant case, the informant's tip, as verified by police surveillance, provided sufficient grounds for the agents to stop appellant and ask for his identification under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); United States v. Wallraff, 705 F.2d 980 (8th Cir.1983); United States v. Scott, 545 F.2d 38 (8th Cir.1976), cert. denied, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977). During the limited questioning that followed, the officers confirmed McGauley's identity and learned that he did not know the name of the friend for whom he was picking up the suitcase. This suspicious circumstance, together with the informant's report and the police corroboration, provided probable cause for appellant's arrest at that time. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Scott, 545 F.2d 38 (8th Cir.1976), cert. denied, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977).
 
 
 18
 b. Statements
 
 
 19
 Appellant next asserts that the statements made by him to law enforcement officers should have been suppressed. He says that he was not given his Miranda rights before being questioned or escorted to the airport police station and that his statements after he received warnings were tainted because his prior admissions had "let the cat out of the bag." We find no merit in this argument.
 
 
 20
 As discussed before, the initial questioning which took place in the parking lot was a proper investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). No Miranda warning is necessary for persons detained for a Terry stop. See, e.g., Berkemer v. McCarty, 68 U.S. 420, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Thus, appellant's first statement explaining that he was picking up the suitcase for an unknown friend was properly admitted.
 
 
 21
 Nor has appellant shown any basis for suppressing his other statements. Enroute to the airport police station after his arrest, McGauley told the officers that he was to receive $100 for picking up the suitcase. The undisputed evidence shows that appellant volunteered this statement without any questions having been asked of him. Because the statement was not the product of either express questioning or its functional equivalent, Miranda warnings were unnecessary. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant made several other statements after he arrived at the police station, but the record indicates that he spoke only after being fully advised of his rights. Because Miranda warnings were not required before appellant's first two statements, the statements made after warning were not tainted in any way. We find, therefore, that the trial court did not err in denying appellant's motion to suppress these statements.
 
 
 22
 c. Validity of Search Warrant
 
 
 23
 Appellant also contends that the seized cocaine should have been suppressed because the affidavits of Detectives Blois and Penn were insufficient to support the issuance of a search warrant.
 
 
 24
 A "totality of circumstances" approach is used to evaluate the validity of a search warrant based on hearsay. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under this standard,
 
 
 25
 [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for * * * conclud[ing]" that probable cause existed.
 
 
 26
 Id. at 238, 103 S.Ct. at 2332 (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).
 
 
 27
 There is "a strong preference for searches made pursuant to a warrant, and, in some instances, [courts] may sustain them where warrantless searches based on a police officer's evaluation of probable cause might fail." United States v. Carlson, 697 F.2d 231, 237 (8th Cir.1983) (quoting United States v. Brown, 584 F.2d 252, 256 (8th Cir.1978), cert. denied, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979)). "[R]eviewing courts should interpret affidavits in a commonsense and realistic fashion, and deference is to be accorded an issuing magistrate's determination of probable cause." United States v. Leichtling, 684 F.2d 553, 555 (8th Cir.1982), cert. denied, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983). Moreover, we are cognizant of the value to be given the corroboration of details of an informant's tip by independent police efforts. Illinois v. Gates, 462 U.S. 213, 237, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).
 
 
 28
 The affidavits submitted in this case provided a sufficient basis for the issuing judge's finding of probable cause. The affidavits indicated that a caller contacted the police and gave a description of appellant's physical appearance, the clothes he was wearing, the kind of car he would be driving, and the suitcase to be picked up, as well as the airline and flight on which the bag would be arriving. The affidavits noted that the police investigation had corroborated this information and found that the name and address on the suitcase were invalid. Finally, the affidavits informed the issuing judge that a trained police dog had sniffed the suitcase for narcotics and had responded positively.
 
 
 29
 Given all the circumstances set forth in the affidavits, we are convinced that the issuing judge had a substantial basis for concluding that there was a fair probability that cocaine would be found in the suitcase. The district court's denial of McGauley's motion to suppress was therefore not in error.
 
 
 30
 d. Other Issues
 
 
 31
 Appellant contends that the trial court committed several prejudicial errors during trial. He argues first that the trial court violated his Fifth Amendment rights by commenting during closing arguments on his failure to testify. Examination of the circumstances surrounding the trial court's comments shows that they were a cautionary measure intended to mitigate any possible prejudice which might have resulted from the prosecutor's argument. The trial court correctly stated the law and its comments were not improper. See United States v. Biondo, 483 F.2d 635, 644 (8th Cir.1973), cert. denied, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); United States v. Mahanna, 461 F.2d 1110 (8th Cir.1972).
 
 
 32
 Appellant also contends that the trial court improperly excluded the testimony of the proposed witness, George Westfall, that Detective Penn's reputation for truth was poor. Because Penn never testified at trial, however, the trial court properly excluded the proposed impeachment testimony. See Fed.R.Evid. 608.
 
 
 33
 Appellant, in his final assertion of error, argues that the trial court improperly denied his motion for judgment of acquittal at the close of the government's case. He relies upon United States v. Morales, 577 F.2d 769 (2d Cir.1978), in asserting that the government did not prove that he knew the suitcase contained narcotics. This reliance is misplaced, however, for Morales involved a challenge to the balance of the jury instructions given by the trial court, an issue not raised here. In determining whether the government's evidence was sufficient to present the charge to the jury, it is necessary to view the evidence in the light most favorable to the government, and to give it the benefit of all reasonable inferences. E.g., United States v. Wisdom, 534 F.2d 1306 (8th Cir.1976). The evidence indicated that appellant had exclusive control of the suitcase containing the cocaine and that he made various conflicting statements. The jury could have reasonably concluded that appellant's inconsistent statements showed a consciousness of guilt as to the contents of the suitcase. The trial court did not err in denying the motion for judgment of acquittal.
 
 
 34
 After carefully examining all issues raised by appellant, we find that no error has been shown. Accordingly, the judgment of conviction is affirmed.
 
 
 
 *
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable James M. Meredith, United States District Judge for the Eastern District of Missouri