# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3246

_____

United States of America,     *
             *
     Appellee,    *
             * Appeal from the United States
   v.          * District Court for the Western
             * District of Missouri.
Pedro Hernandez-Hernandez, also *
known as David Chavez, also known *
as Jose Pacheco,     *
             *
     Appellant.   *

_____

Submitted: April 15, 2003

Filed: April 21, 2003

_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.

_____

FAGG, Circuit Judge.

The Government charged Pedro Hernandez-Hernandez with illegally reentering the United States after deportation following a felony conviction in violation of 8 U.S.C. § 1326(a) and (b)(2). The district court[*] held an evidentiary hearing, then denied Hernandez-Hernandez's motion to suppress. Hernandez-Hernandez

_____

[*]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

conditionally pleaded guilty, and now appeals the denial of his suppression motion. We affirm.

On October 3, 2001, a Drug Enforcement Administration (DEA) taskforce received information from two independent sources that a Hispanic male was distributing drugs and had firearms at his home in Kansas City, Missouri. One source, who was in custody on drug charges, had conducted drug business with the Hispanic male there earlier the same day. Both sources stated they had been in the residence and personally observed the drugs and guns that day, the Hispanic male was in the front yard most of the time, and he had a goatee and was wearing a "FUBU" logo shirt. One source said the man usually had a gun in the small of his back. Agents drove by the same day and saw a Hispanic male with a goatee and FUBU shirt outside in front of the residence. Later that day, a team of nine officers, including DEA agents, Immigration and Naturalization Service (INS) agents, and police officers, went to the home. When they arrived, three adult males were in the front yard, including one matching the description given by the sources and later identified as Hernandez-Hernandez. DEA agents patted down the three men for weapons and, finding none, told them to take a seat, but did not handcuff or otherwise physically restrain them.

After Hernandez-Hernandez's wife consented, officers searched the residence and found several firearms, about five pounds of marijuana, over $4000 in cash, drug scales, and wrappings. During the search, an INS agent approached Hernandez-Hernandez, who was seated on the front porch. The agent identified himself in Spanish as an INS officer, showed his credentials, and asked Hernandez-Hernandez of what country he was a citizen, who he was, and whether he had any identification. Hernandez-Hernandez stated he was David Chavez from Chihuahua, Mexico, and pulled an Indiana identification card in that name from his wallet. The agent asked Hernandez-Hernandez whether he had any papers to be legally in the United States, and Hernandez-Hernandez stated he had none. The agent then asked Hernandez-

Hernandez whether he had entered the United States legally or illegally, and Hernandez-Hernandez admitted he had entered illegally.  The agent told Hernandez-Hernandez he was being arrested for violating the immigration laws and handcuffed him.  Hernandez-Hernandez was correctly identified after his arrest and booking when his fingerprints were sent to the Federal Bureau of Investigation for identification.  INS records also showed his identity and that he was a previously deported alien, after a Kansas conviction for voluntary manslaughter.

On appeal, Hernandez-Hernandez argues he was handcuffed immediately after the frisk and thus arrested without probable cause, so his later statements to the agent about his citizenship and immigration status before any Miranda warning was given must be suppressed.

An officer's obligation to give a suspect Miranda warnings before questioning extends only to those instances where the individual is "in custody." Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam).  To determine whether an individual is in custody, a court must examine all the circumstances surrounding an interrogation and decide whether there was "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Id. (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). Although the agents briefly detained Hernandez-Hernandez at his home while conducting the consensual search, the facts do not show they restrained him to a degree associated with formal arrest. See Michigan v. Summers, 452 U.S. 692, 705 (1981) (holding search warrant implicitly includes authority to detain occupants of premises during search on less than probable cause for an arrest); United States v. Enslin, 315 F.3d 1205, 1213 n.31 (9th Cir. 2003) (applying Summers rule to consensual search).  The district court found Hernandez was not handcuffed or arrested until after he made the statements to the INS agent, and the court's findings are not clearly erroneous.  Because Hernandez-Hernandez was not under arrest when he made the statements to the INS

agent, there was no custodial interrogation requiring <u>Miranda</u> warnings. <u>United States v. McGauley</u>, 786 F.2d 888, 890 (8th Cir. 1986).

Rather than being immediately arrested without probable cause, Hernandez-Hernandez was detained as a part of a <u>Terry</u> stop. If officers possess a reasonable suspicion of criminal activity, they may briefly detain a suspect to investigate the possible criminal activity, even though there is no probable cause for an actual arrest. <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968). If the officer also reasonably believes the person may be armed and dangerous, the officer may frisk the suspect for weapons. <u>Id.</u> at 24. The detention is permissible to determine the suspect's identity or to maintain the status quo while obtaining more information. <u>Adams v. Williams</u>, 407 U.S. 143, 146 (1972). The officer may ask "'a moderate number of questions to determine the person's identity and to try to obtain information confirming or dispelling the officer's suspicions.'" <u>United States v. Rodriguez-Arreola</u>, 270 F.3d 611, 617 (8th Cir. 2001) (quoting <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984)). The officer's suspicion is reasonable if the officer knows particularized, objective facts that lead to a rational inference that a crime is being or has been committed. <u>Terry</u>, 392 U.S. at 21-22.

Hernandez-Hernandez contends that even if he was not arrested until after the officers learned of his illegal presence in the country, the investigative detention and patdown were illegal because the officers lacked the necessary reasonable suspicion that Hernandez-Hernandez was engaged in criminal activity and that he was armed and dangerous. We disagree. Two independent eyewitness sources, including one known source in custody who had conducted drug business with Hernandez-Hernandez, provided information that Hernandez-Hernandez had many firearms and was dealing drugs from his home. They described Hernandez-Hernandez and predicted he would be standing outside his house. An undercover officer drove by the residence and confirmed this information. Hernandez-Hernandez asserts police should have done more to corroborate the tips, but does not directly challenge the

sources' veracity, reliability, or basis of knowledge.  See Alabama v. White, 496 U.S. 327, 328 (1990).  Considering the totality of the circumstances, Hernandez-Hernandez's contention fails because the officers had reasonable suspicion of criminal drug activity allowing them briefly to detain Hernandez-Hernandez to determine his identity and maintain the status quo pending the outcome of the search. McGauley, 786 F.2d at 890.  Hernandez-Hernandez does not contend the agent's questioning exceeded the permissible bounds of the Terry stop.  Once Hernandez-Hernandez told the agent he was in the United States illegally, there was probable cause to arrest Hernandez-Hernandez without a warrant.

We thus affirm the district court's denial of Hernandez-Hernandez's motion to suppress.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-