# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3032

———————

United States of America,          *
                                   *
          Appellee,                *
                                   *    Appeal from the United States
     v.                            *    District Court for the Northern
                                   *    District of Iowa.
Thomas Horton, also known as       *
Martel Terrell Erving,             *
                                   *
          Appellant.               *

———————

Submitted: April 14, 2010
Filed: July 26, 2010

———————

Before LOKEN, BRIGHT, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

Thomas Horton appeals the district court's[1] denial of his motion to suppress. The district court found that police had reasonable, articulable suspicion to stop Horton and that police did not exceed the permissible scope of the stop. Horton

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for Northern District of Iowa, adopting the report and recommendation of the Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa.

entered a conditional guilty plea to possession of a firearm as a felon, reserving the right to appeal the denial of his motion to suppress. We affirm.

## I.

On the morning of February 5, 2008, a cab driver arrived at an apartment complex in Cedar Rapids, Iowa, to pick up a man later identified as Horton. After waiting ten minutes in front of the complex, the cab driver approached the front door. Horton attempted to exit, but was unable to because the front door was broken. He then went to a second story window and began to exit as if he were going to jump. The cab driver, however, persuaded Horton not to jump. Horton then returned to the front door and pried it open with a knife.

The cab driver drove Horton to the Cedar Rapids bus station. During the drive, Horton talked of gang activity and asked if the cab driver was a police officer. After dropping off Horton at the bus station, the cab driver called the Cedar Rapids Police Department and relayed the incident. The cab driver described Horton as agitated, nervous, and possibly armed with a knife. The cab driver also provided a physical description of Horton as a black male, wearing a black coat and gray shirt and carrying a backpack.

Officers were dispatched to the bus station at 8:23 a.m. While driving by the station, officers saw two black males standing near a bus-loading area. One of the males, Horton, matched the cab driver's physical description but was not carrying a backpack. The officers made a U-turn into the bus-loading area of the station. Upon seeing the approaching police car, Horton briskly walked away from the bus station towards an apartment complex while continually checking to see if the officers were following him. Horton quickly entered the complex, but almost immediately came back outside after discovering the inner doorway to the apartment complex was locked.

Police officers stopped Horton as he exited the complex and explained why they were at the bus station. The officers conducted a pat-down search of Horton but did not find the knife or any other weapon. Police then asked Horton for his name and identification. Horton stated his name was Tony Smith and his birth date was July 5, 1984, but he was unable to provide identification. Officers next requested any piece of paper displaying his identification information. Horton presented the officers with his bus ticket, which was under the name Tony Williams. Horton stated that he uses a fake name for traveling.

Officers next asked Horton to sit in the back of the police car so they could determine his identity, and Horton consented. Once Horton was seated in the police car, officers asked Horton why he was in Cedar Rapids. Horton stated he was visiting his aunt, whom he first referred to as Thelma Jackson but later in the conversation referred to as Thelma Hudson. He also provided police with two additional birth dates, July 4, 1986, and July 5, 1982. While Horton was in the back of the police car, a woman claiming to be Horton's girlfriend called his cell phone and told officers a fourth possible birth date, June 12, 1982.

Soon after, a second group of police officers arrived at the police car with an abandoned black backpack they found at the bus station. Horton claimed ownership of the backpack and denied permission to search the bag. Officers placed the backpack in the trunk of the squad car without conducting a search of the bag.

At this point, an officer smelled burnt marijuana on Horton. When questioned, Horton admitted to smoking marijuana earlier that morning. The cab driver also arrived on the scene, identified Horton and provided officers with additional details of Horton's suspicious behavior. Officers then obtained the address for Horton's aunt and went to the location. No one at the address knew anyone named Tony Smith or Tony Williams. The residents also stated that no one had been at their apartment that morning.

Officers then arrested Horton for interference with official acts at approximately 9:35 a.m. A search of the backpack incident to the arrest revealed a loaded handgun. Horton then denied ownership of the backpack.

Horton was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the handgun as the fruit of an illegal seizure, and the district court denied his motion. Horton entered a conditional guilty plea, reserving his right to appeal the denial of the motion to suppress.

II.

Horton argues on appeal that the initial stop was an illegal seizure within the meaning of the Fourth Amendment. Horton also claims that even assuming the officers had justification for the initial seizure, they exceeded the permissible scope of the stop when they conducted a frisk for weapons and continued to detain and question him.

We review the district court's legal conclusions *de novo* and its factual findings for clear error. United States v. Griffith, 533 F.3d 979, 982 (8th Cir. 2008). We also must "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." United States v. Gomez, 312 F.3d 920, 923 (8th Cir. 2002) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

The parties agree that this police encounter was a Terry stop and therefore a seizure within the meaning of the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 16–19 (1968). Police may conduct a brief investigative stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime. Id. at 21. This standard requires that officers be able to point to specific, articulable facts justifying the seizure. Id. Reasonable, articulable suspicion for a

Terry stop requires less than probable cause of criminal activity, but the suspicion cannot be based on an "inarticulate hunch[]." See Terry, 392 U.S. at 22. The existence of reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience. United States v. Arvizu, 534 U.S. 266, 273–74 (2002).

Various behaviors and circumstances can contribute to, or be sufficient to provide, reasonable, articulable suspicion. For example, unprovoked flight at the sight of an officer can contribute to reasonable, articulable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (finding the suspect's flight upon seeing police officers while in a high-crime area justified Terry stop). Also, a stop typically is justified when a suspect matches the description of a person involved in a disturbance near in time and location to the stop. United States v. Hicks, 531 F.3d 555, 558 (7th Cir. 2003).

Before initiating the stop in this case, the officers had received information from the cab driver on Horton's odd behavior and the possibility that he was carrying a knife. Further, Horton matched the physical description, and officers witnessed Horton's flight at the sight of police. The district court did not err in finding that police had reasonable, articulable suspicion to justify the initial stop.

Next, Horton argues that the police officers unlawfully expanded the scope of the Terry stop, first by conducting a protective frisk for weapons and next by questioning him as to his identity. This argument presents two separate issues, which we discuss in turn.

Once a suspect is legally stopped, "an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety." United States v. Davis, 457 F.3d 817, 822 (8th Cir.

2006). We apply an objective test when determining whether the police officer had reasonable, articulable suspicion for the pat-down. Terry, 392 U.S. at 27. To pass this test, the officer does not need to be certain that the suspect was armed. Rather, a pat-down is permissible if a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id.

Here, officers had information from the cab driver that the suspect may be carrying a knife, and Horton matched the physical description of the suspect. The district court properly found that police did not exceed the scope of the Terry stop by conducting a protective frisk for weapons.

Next, an officer may temporarily detain an individual during a Terry stop "to determine the suspect's identity or to maintain the status quo while obtaining more information." United States v. Hernandez-Hernandez, 327 F.3d 703, 706 (8th Cir. 2003) (citing Adams v. Williams, 407 U.S. 143, 146 (1972)). Questioning a suspect about his or her identity is generally within the confines of a valid Terry stop. See Berkemer v. McCarty, 468 U.S. 420, 439 (1984). Police officers are allowed to expand the investigation if routine questioning raises further suspicions. United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008). Traveling under an assumed name and failing to provide identification are factors that, taken in combination with other circumstances, can provide the necessary suspicion to expand the investigation. United States v. Hawthorne, 982 F.2d 1186, 1190 n.4 (8th Cir. 1992).

In this case, Horton was traveling under a different name than he provided police, gave multiple birth dates and told inconsistent stories as to why he was in Cedar Rapids. An investigating officer continued to ask about Horton's identity because, in the officer's experience, people who give false names and birth dates do so because they have outstanding warrants. Therefore, the police officers did not exceed the scope of the Terry stop by questioning Horton about his identity. There was sufficient suspicion to justify the expansion of the investigation.

The judgment of the district court is affirmed.

_____