# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2110
_____

United States of America

*Plaintiff - Appellee*

v.

Victor Stokes

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri
_____

Submitted: November 18, 2022
Filed: March 15, 2023
_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Victor Stokes conditionally pled guilty to being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1]

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri, adopting the report and recommendations of the Honorable Lajuana M. Counts, United States Magistrate Judge for the Western District of Missouri.

sentenced Stokes to 48 months of imprisonment. Stokes now appeals the district court's denial of his motion to suppress. We affirm.

## I. Background

Shortly before 3:00 a.m. on August 30, 2020, the owner of a salvage lot notified the Independence, Missouri, Police Department about a suspicious person on the lot. Officer Ian Storey was dispatched and given the description of a black male wearing a white t-shirt with blue or black shorts. Officer Storey arrived at the lot and found only Stokes on the property. Stokes is not black, but he was wearing a white t-shirt.[2] After Officer Storey made contact, Stokes sat down and said he was waiting there until the morning because he thought his stolen car was on the lot. When Officer Storey asked if Stokes reported the stolen car to the police, Stokes said he had not reported it stolen. Based on his experience and the fact he found Stokes's story unreasonable, Officer Storey suspected Stokes was lying.

Officer Storey decided further investigation was necessary to determine whether Stokes committed a theft or was trespassing, particularly because the property owner was the complainant. After noticing Stokes had "a bunch of things in his pockets," Officer Storey made two requests for Stokes to stand so he could perform a frisk. Stokes initially refused, but then stood and began to back away. Officer Storey reached out to grab Stokes, who immediately began to reach into his waistband and then turn to run. Believing Stokes was reaching for a weapon, Officer Storey first drew his service pistol, started giving Stokes commands, and then chased him. When Stokes did not follow the commands, Officer Storey deployed his taser. After arresting Stokes for interfering with an officer's official duties, Officer Storey performed a search incident to arrest and discovered that Stokes had a sawed-off shotgun on a lanyard down his shorts as well as several shotgun shells. At the time of his arrest, Stokes was a convicted felon on probation.

---

[2]There is disagreement in the record about whether Stokes was wearing pants or shorts. While the district court found that Stokes was wearing shorts, Officer Storey's testimony was inconsistent on this point.

Stokes moved to suppress the evidence found on his person, arguing Officer Storey lacked reasonable suspicion that Stokes was engaged in criminal activity and thus the search and seizure violated the Fourth Amendment of the U.S. Constitution. The magistrate judge recommended the district court deny the motion to suppress, concluding Officer Storey had reasonable, articulable suspicion of criminal activity based on Officer Storey's experience that thefts at salvage lots in the area regularly occurred between 1:00 a.m. and 7:00 a.m., Stokes's statement he was looking for his stolen vehicle when he had not reported a vehicle stolen, and the fact that Stokes was the only person on the property. The district court adopted the recommendation. Stokes later changed his plea to guilty but reserved the right to appeal the denial of his motion to suppress.

## II. Analysis

"In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its ultimate conclusion whether the Fourth Amendment was violated *de novo*." *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021).

The parties agree there are two issues on appeal, whether Officer Storey had reasonable suspicion to: (1) conduct a *Terry* stop on Stokes and (2) command Stokes to stand for a frisk. Because Stokes only challenged the district court's legal conclusions, there is no basis to disturb the district court's findings of fact.

### A. Reasonable Suspicion to Conduct a *Terry* Stop

"[T]his police encounter was a *Terry* stop and therefore a seizure within the meaning of the Fourth Amendment." *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). To conduct a *Terry* stop, police need "reasonable, articulable suspicion that a person is committing or is about to commit a crime." *Id*. Although this is a lower standard than probable cause, *United States v. Arvizu*, 534 U.S. 266, 274 (2002), officers must be able to point to specific facts that justify the seizure and more than simply an "inarticulate hunch[]." *Terry*, 392 U.S. at 22.

We look to the totality of the circumstances in making this determination, "taking into account an officer's deductions and rational inferences resulting from relevant training and experience." *Horton*, 611 F.3d at 940; *accord Arvizu*, 534 U.S. at 273–74. In other words, "[a]n officer may have reasonable suspicion to conduct a *Terry* stop based on a combination of factors even where no single factor, considered alone, would justify a stop." *United States v. Quinn*, 812 F.3d 694, 698 (8th Cir. 2016).

Officer Storey detailed several specific factors that led him to conduct a *Terry* stop including: (1) his experience arresting people at salvage lots for theft and trespassing "a couple times a week"; (2) the time of night; (3) Stokes's sole presence on the salvage lot; (4) Stokes's attire matching the description given by the property owner; and (5) Stokes's unreasonable responses. These factors were included in the magistrate judge's findings of fact, which were adopted by the district court.

Stokes maintains his behavior did not provide Officer Storey with reasonable suspicion. Stokes first focused on the discrepancy in race from the complaining property owner and the fact that Stokes was not trespassing under the Independence, Missouri Municipal Code. *See* Independence, MO., Code § 12.05.008 (2020), https://library.municode.com/mo/independence (requiring a person to either enter the fenced property of another or refuse to leave upon the demand of the owner). However, the district court found that "[w]hether or not [Stokes] was legally 'trespassing' on the Lot," the factors provided by Officer Storey created "reasonable suspicion that criminal activity [was] afoot."

"The fatal flaw in [Stokes's] approach is that he challenges the sufficiency of each factor in isolation from the rest. The totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'" *Quinn*, 812 F.3d at 698 (quoting *Arvizu*, 534 U.S. at 274). Courts have previously held that many of these factors, when combined, support a conclusion of reasonable suspicion. To begin, "[f]actors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427,

1429 (8th Cir. 1995). And "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Officer Storey had vast experience patrolling this area and routinely made arrests on salvage lots at this time of night. It is unusual for someone to be present at a salvage lot in the middle of the night, particularly since the property owner was asking the police to investigate.

We have held that "generic suspect descriptions and crime-scene proximity can warrant reasonable suspicion where there are few or no other potential suspects in the area who match the description." *Quinn*, 812 F.3d at 699. Similarly, in *Horton*, this court clarified that "a stop typically is justified when a suspect matches the description of a person involved in a disturbance near in time and location to the stop." 611 F.3d at 940. Although Stokes's race was different from the race provided by the property owner, his attire generally matched the description, and he was the only individual present on the property.

We have similarly acknowledged in the context of traffic stops that "vague and confusing answers to routine questions" contribute to a conclusion of reasonable suspicion. *United States v. Pacheco*, 996 F.3d 508, 512 (8th Cir. 2021); *accord United States v. Gastelum*, 11 F.4th 898, 903 (8th Cir. 2021) (explaining "odd answers and strange travel plans can support a finding of reasonable suspicion"). Stokes's answers to Officer Storey's questions about why he was at the salvage lot at 3:00 a.m. were odd because he was waiting at the salvage lot in the middle of the night so he could inquire about a stolen car in the morning and Stokes had not reported it stolen. Under a totality of the circumstances analysis, these facts were sufficient to provide Officer Storey with reasonable suspicion to conduct a *Terry* stop.

### B. Reasonable Suspicion to Conduct a *Terry* Frisk

The next issue Stokes raises on appeal is whether Officer Storey had reasonable suspicion for an attempted *Terry* frisk. The search incident to arrest, which Officer Storey performed after he deployed the taser, is not challenged by

Stokes. Once a suspect is legally stopped, "an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety." *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006). We apply an objective test to determine whether the police officer had reasonable, articulable suspicion for the pat-down. *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002). "Under this objective standard, the 'officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* at 578 (quoting *Terry*, 392 U.S. at 27). Again, we consider the totality of the circumstances. *Pollreis v. Marzolf*, 9 F.4th 737, 747 (8th Cir. 2021).

Here, the facts are analogous to *Roggeman* where this court held the frisk was justified because the officer "was alone, he stopped [the defendant] late at night, and the scene of the stop was poorly lit." 279 F.3d at 578. We held that "[t]hese facts go to officer safety . . . ." *Id.* at 578–79. We also noted that the pat-down was further supported by "the District Court's own finding that the trooper observed the bulge in [the defendant's] right-front pocket before he patted down that pocket." *Id.* at 579. Similarly, Officer Storey was alone at the salvage lot in the middle of the night with a suspect who was acting suspiciously and had unusually full pockets. While Stokes argues the bulge in his pockets was insufficient to justify the frisk, under the totality of the circumstances it was reasonable for Officer Storey to fear for his safety. We conclude, Officer Storey had reasonable suspicion to justify the attempted frisk.

## III. Conclusion

The judgment of the district court is affirmed.

_____