[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11166
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00164-CR-1-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TREMAINE STEWART,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 5, 2009)

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

On December 9, 2008, Tremaine Stewart entered a conditional plea of

guilty[1] to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and thus preserved his right to challenge on appeal the district court's denial of his motion to suppress statements he made to the police prior to his arrest. Following the court's imposition of sentence, he took this appeal, claiming error in the district court's ruling.

The district court referred Stewart's motion to suppress to a magistrate judge, who held an evidentiary hearing and recommended that the court deny the motion. We recite the facts found by the magistrate judge since they accurately reflect the circumstances surrounding the statements Stewart says should have been suppressed.

On February 15, 2006, at approximately 6:15 p.m., Atlanta Police Department officers Brandon Hamberger, Valle and Thongkoth were on patrol in a marked police vehicle in the area near 1247 Simpson Road in Atlanta, . . . a high crime area. Officer Hamberger was driving, Officer Valle was in the passenger seat, and Officer Thongkoth was in the back seat. . . . [I]t was dark but there was a lot of light from street lights. While driving, Officer Hamberger observed [Stewart] running across the street. [Stewart] was not engaged in any type of criminal activity. [He] was wearing a dark-colored winter jacket that hung just below his waist. The jacket was unzipped, with slotted pockets, and the right side of the jacket hung approximately six inches lower than the left side of the jacket. Officer Hamberger observed a bulge in [Stewart's] right coat pocket and it appeared to Officer Hamberger that something heavy was in that pocket. As [Stewart] was running across the street, Officer Hamberger observed him grab his right pocket and hold it against his

_____

[1] Stewart entered the plea pursuant to pursuant to Fed. R. Crim. P. 11(a)(2),

2

body to keep it from bouncing, while his left arm continued to move. Officer Hamberger believed that the bulge and [Stewart's] movements were consistent with someone carrying a firearm. When [Stewart] reached the other side of the street, Officer Hamberger noticed him look at the officers' patrol car and look away at least four times. Officer Hamburger believed that [his] behavior indicated that [he] was nervous about something. He suspected that [Stewart] was carrying a concealed weapon. Officer Hamburger made a U-turn and parked his patrol car in the opposite direction alongside the sidewalk where . . . Stewart was walking. All three uniformed, armed officers exited their patrol car. Officer Hamberger walked directly up to . . . . Stewart. The other two officers stood guard on either side of the patrol car. None of the officers had their weapons drawn. Officer Hamberger did not block [his] path. [Stewart] made no attempt to run. Officer Hamberger asked [him] whether he had a gun. [He] said, "Yes, I'm dirty." [He] told Officer Hamberger that he had found the weapon on the ground. Officer Hamberger asked [him] if he had a permit for the weapon. [He] said, "No." Officer Hamberger then placed [him] under arrest, and retrieved a .25 caliber pistol from the [Stewart's] right coat pocket. None of the officers frisked [Stewart] before Officer Hamberger asked him if he was carrying a weapon. Officer Hamberger did not tell [him] that he did not have to answer his questions or that he was free to leave.

At the conclusion of the evidentiary hearing, Stewart argued that his statements to Officer Hamberger—that he was "dirty" and did not have a permit for the gun—should be suppressed because he made them after Hamberger seized him without reasonable suspicion to believe that he was engaged in criminal activity. The magistrate judge, and the district court in adopting her recommendation, concluded that reasonable suspicion was present, and therefore rejected Stewart's argument. Stewart now asks us to hold that reasonable

3

suspicion was lacking.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV. The Amendment, however, does not protect a person from being approached by a police officer "in appropriate circumstances and in an appropriate manner . . . for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest," Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). A police officer may stop and seize a person for a brief, investigatory Terry stop where (1) the officer has a reasonable suspicion that the person was involved in, or is about to be involved in, criminal activity, and (2) the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20, 88 S.Ct 1879; United States v. Acosta, 363 F.3d 1141, 1144-45 (11th Cir. 2004). A person's presence in a high-crime area, standing alone, is insufficient to establish reasonable suspicion, but such presence, coupled with other behavior, can provide an officer with reasonable suspicion. Lopez-Garcia, 565 F.3d at 1314.

Here, the magistrate judge had ample evidence before her on which to find that the police had reasonable suspicion to believe that Stewart was unlawfully carrying a gun or was otherwise about to engage in criminal activity. Hence, the district court did not err in denying his motion to suppress.

4

AFFIRMED.