# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1731

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Fonta M. Jones, | * | **[TO BE PUBLISHED]** |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: February 12, 2010
Filed: June 8, 2010

_____

Before LOKEN, Chief Judge,[*] GRUENDER and BENTON, Circuit Judges.

_____

PER CURIAM.

While routinely patrolling a high-crime area on a mild September afternoon, Omaha police officer Paul Hasiak saw a person later identified as Fonta M. Jones walking across a church parking lot wearing a long-sleeved hooded sweatshirt and "clutching the front area of his hoodie pocket with his right hand." Jones watched as the marked police cruiser drove by. The officers drove around the block and regained sight of Jones, still walking with his right hand clutching his front hoodie pocket in

_____

[*]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

the same position. Officer Hasiak decided to stop and frisk Jones, who stopped walking when the cruiser pulled up. Hasiak told Jones to place his hands behind his back and then moved behind Jones, secured his hands, and patted him down for weapons. Jones was arrested when Hasiak found a 9-millimeter handgun in the front hoodie pocket and a loaded magazine in Jones's back right pocket. When it was later determined that Jones had prior felony drug convictions, he was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Jones moved to suppress the seized firearm and ammunition and a post-arrest statement, arguing that Officer Hasiak lacked reasonable suspicion to stop and frisk. See Terry v. Ohio, 392 U.S. 1 (1968). After an evidentiary hearing, the district court[1] granted the motion. The government appeals this interlocutory order, which we have jurisdiction to review. 18 U.S.C. § 3731. We affirm.

The government must prove that Officer Hasiak had reasonable suspicion to stop and frisk Jones because it conceded that Hasiak's actions were a detention and search to which Fourth Amendment protections apply, not merely a consensual encounter between a citizen and the police. Reasonable suspicion is determined by "look[ing] at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing [based upon his] own experience and specialized training to make inferences from and deductions about the cumulative information available." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations and quotations omitted). Though officers may not rely on "inarticulate hunches" to justify a stop, Terry, 392 U.S. at 22, the likelihood of criminal activity need not rise to the level required for probable cause. Arvizu, 534 U.S. at 274. We review the district court's determination of reasonable suspicion *de*

_____

[1]The HONORABLE JOSEPH F. BATAILLON, Chief Judge of the United States District Court for the District of Nebraska, adopting the report and recommendations of the HONORABLE F.A. GOSSETT, III, United States Magistrate Judge for the District of Nebraska.

*novo* and its findings of historical fact for clear error, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996).

The government argues that testimony at the evidentiary hearing established that Officer Hasiak had reasonable suspicion to believe, based upon his training and experience, that Jones was holding a firearm against his body. Hasiak testified that he was trained to look for clues that an individual is carrying a firearm, such as walking with his hand held against his midriff, as if holding something against his body. Hasiak testified that, in his four years as a cruiser officer, he stopped ten other people walking in this manner, and every one was carrying a firearm. Officer John Supeh, Hasiak's "street survival" trainer at the Omaha Police Training Academy, testified that holding one's hand against the body is "considered a protective arm movement" to secure a weapon, an action which "would lead to what we consider a stop and frisk." The government argues that Hasiak's reasonable suspicion was supported by additional facts: (1) that Jones was walking in a high crime precinct in a neighborhood considered to be a violent "hot spot" in that precinct, (2) that it was sunny and 68 degrees, so Jones by wearing a long-sleeved sweatshirt "was obviously hiding something he did not want the world, and the cruiser officers, to see," and (3) that Jones "continually watched the officers [as the cruiser drove by] as if concerned that they would stop him."

In considering this argument, we find it remarkable that nowhere in the district court record did the government identify what criminal activity Officer Hasiak suspected. Rather, the government leaped to the officer safety rationale for a protective frisk for weapons, ignoring the mandate in Terry that there must be reasonable suspicion of on-going criminal activity justifying a *stop* before a coercive *frisk* may be constitutionally employed. See, e.g., United States v. Hughes, 517 F.3d 1013, 1019 (8th Cir. 2008); United States v. Gray, 213 F.3d 998, 1000 (8th Cir. 2000). Here, in contrast to the vast majority of cases in which protective frisks have been

-3-

upheld, (i) the officers did not have reasonable suspicion that Jones was engaged in criminal activity other than carrying a weapon, such as drug trafficking or theft; (ii) Jones did not panic or flee when Officer Hasiak approached; and (iii) Jones was forcibly detained and searched before he said anything suspicious or incriminating. Thus, the only suspicion Hasiak articulated was that Jones was carrying a gun.

On appeal, the government argues for the first time that Officer Hasiak had reasonable suspicion that Jones was carrying a concealed weapon in violation of § 28-1202 of the Nebraska Revised Statutes, which provides in relevant part:

> (1)(a) Except as otherwise provided in this section, any person who carries a weapon . . . concealed on or about his or her person such as a revolver . . . commits the offense of carrying a concealed weapon.
>
> (b) It is an affirmative defense that the defendant was engaged in any lawful business, calling, or employment . . . and the circumstances in which such person was placed at the time were such as to justify a prudent person in carrying the weapon . . . for the defense of his or her person, property, or family.
>
> (2) This section does not apply to a person who is the holder of a valid permit issued under the Concealed Handgun Permit Act . . . .

Like the district court, we conclude that Officer Hasiak lacked the requisite reasonable suspicion that Jones was carrying a concealed firearm in his hoodie pocket, as opposed to some other object, or no object at all. The critical question is, again, whether Hasiak had a "particularized and objective basis" for his suspicion. Arvizu, 534 U.S. at 273. Given the deference we must accord both Hasiak's training and experience and the inferences drawn by a resident district judge, this is a close question.

-4-

The government emphasizes that Jones by clutching the outside of his hoodie pocket exhibited one of the firearm-carrying clues Hasiak had been trained to observe, and Hasiak's testimony that, on ten other occasions, the suspect he stopped and frisked was in fact armed. But this evidence was not as conclusive as the government suggests. On cross examination, Hasiak admitted that he was unable to see the size or shape of whatever was in Jones's hoodie pocket, and that Jones exhibited none of the other clues Hasiak had been trained to look for, such as walking with an unusual gait, turning that part of his body away from the officers' view, adjusting his grip or the location of the item in his pocket, or running away. Compare United States v. Jackson, 175 F.3d 600, 601-02 (8th Cir.), cert. denied, 528 U.S. 828 (1999). Government counsel then failed to clarify whether the other ten suspects to whom Hasiak generally referred had likewise exhibited only this one telltale clue. Because totality of the circumstances is the test, undue focus on one circumstance is suspect.

The government does suggest the presence of other suspicious circumstances, but all were shared by countless, wholly innocent persons -- walking in a high-crime area, wearing a sweatshirt on a September day that began at a cool 50 degrees in the morning but warmed to 68 degrees by late afternoon, and intently watching a police cruiser drive by. In other words, the totality of these circumstances, on which our inquiry must be based, adds nothing to Jones's protective clutching of *something* in his hoodie pocket. Compare United States v. Wright, 582 F.3d 199, 212 (1st Cir. 2009) (while the totality of the circumstances gave rise to reasonable suspicion criminal activity was afoot, "the fact that Wright clutched at [something heavy in] his pocket, even while in flight, cannot support an inference that the object he clutched was specifically a weapon").

We suspect that nearly every person has, at one time or another, walked in public using one hand to "clutch" a perishable or valuable or fragile item being lawfully carried in a jacket or sweatshirt pocket in order to protect it from falling to the ground or suffering other damage. With only this circumstance to support Officer

Hasiak's suspicion, though we are mindful of the need to credit law enforcement officers who draw on their experience and specialized training, we conclude that "[t]oo many people fit this description for it to justify a reasonable suspicion of criminal activity." Gray, 213 F.3d at 1001; see Reid v. Georgia, 448 U.S. 438, 441 (1980) (no reasonable suspicion if "circumstances describe a very large category of presumably innocent travelers"); Johnson v. Campbell, 332 F.3d 199, 208 (3rd Cir. 2003) ("There are limits, however, to how far police training and experience can go towards finding latent criminality in innocent acts."); United States v. Crawford, 891 F.2d 680, 682 (8th Cir. 1989) (no reasonable suspicion when defendant's "conduct [was] typical of countless innocent people"); United States v. Davis, 2008 WL 4372705, at *5 (S.D. Tex. Sept. 22, 2008).

We do not underestimate the importance of ferreting out violent offenders who unlawfully carry firearms in public, and the value of protective frisks in guarding the safety of law enforcement officers and others who may be in harm's way. See Terry, 392 U.S. at 23-24. But as we noted in Hughes, 517 F.3d at 1018, "[b]eing stopped and frisked on the street is a substantial invasion of an individual's interest to be free from arbitrary interference by police," and the police have "less invasive options" for "identifying the perpetrators of crime." Most obviously, Officer Hasiak could have initiated a consensual encounter, for which no articulable suspicion is required, and which "may both crystallize previously unconfirmed suspicions of criminal activity and give rise to legitimate concerns for officer safety." United States v. Davis, 202 F.3d 1060, 1063 (8th Cir.), cert. denied, 531 U.S. 883 (2000). In United States v. Stewart, 352 Fed. App'x 322, 323-24 (11th Cir. 2009), for example, defendant was seen running in a high crime area and apparently holding a heavy object in his pocket against his body, but he was not arrested until the officers asked if he had a gun, and he said "Yes, I'm dirty," and then admitted not having a permit. See also United States v. Maher, 145 F.3d 907, 908-09 (7th Cir. 1998).

After he was arrested and placed in the police cruiser, Jones volunteered that he was glad Hasiak stopped him because Jones "was about to go do something that he would never get out of jail for."  This admission confirms that Officer Hasiak's instincts were sound and his action eliminated a serious risk to public safety.  However, that action also violated Jones's Fourth Amendment rights, and we must enforce the rule excluding the use of evidence that was unconstitutionally obtained.  Accordingly, the order of the district court dated March 4, 2009, is affirmed.

LOKEN, Chief Judge, concurring.

I join the opinion of the court.  In addition, even if I agreed with the government that Officer Hasiak had reasonable articulable suspicion that Jones was carrying a concealed weapon, I would affirm the suppression of evidence in this case.

The plain language of Neb. Rev. Stat. § 28-1202 makes clear that a significant portion of the general public may *lawfully* carry a concealed weapon -- persons engaged in a lawful business in circumstances justifying carrying the weapon for defense of "person, property, or family," and persons holding a valid permit issued under the Concealed Handgun Permit Act, Neb. Rev. Stat. §§ 69-2427 to -2448.  If police find a concealed weapon during the course of a valid stop, such as a traffic stop, they may well have probable cause to arrest the person for violating a statute such as § 28-1202(1)(a).  See United States v. Peyton, 108 F.3d 876, 877 (8th Cir. 1997).  But the question here is whether anyone reasonably *suspected* of having a firearm in his or her pocket or purse may be forcibly stopped and searched when the police have no particularized reason to suspect that the person is *unlawfully* carrying a weapon.  No Eighth Circuit opinion has addressed that issue.  In the one case upholding a stop based upon the criminal activity of carrying a concealed weapon, we emphasized that the officer also had reasonable suspicion the defendant "was too young to obtain a permit to carry a concealed weapon." United States v. Brown, 550 F.3d 724, 727 (8th Cir. 2008).

The government asserted at oral argument that sweeping authority to stop and frisk any person suspected of carrying a concealed weapon is reasonable because the "exceptions" to the prohibition in § 28-1202(1)(a) are merely affirmative defenses. In the first place, the assertion is wrong. Although § 28-1202(1)(b) provides that carrying a weapon for self-defense reasons is an affirmative defense, § 28-1202(2) provides that the prohibition "does not apply to a person who is the holder of a valid permit." Therefore, because the government offered no evidence that Officer Hasiak had reasonable suspicion Jones lacked a valid permit, it failed to prove a valid stop based on this statute.

More importantly, even if the statute expressly declared that all circumstances when a concealed weapon may be lawfully carried are "exceptions" and "affirmative defenses" to its prohibition, the people of Nebraska in the 1988 general election, some years after the enactment of § 28-1202, amended Article I, § 1 of the Nebraska Constitution to provide that their "inherent and inalienable rights" include the right "to keep and bear arms for security or defense of self, family, home, and others . . . and all other lawful purposes." This amendment doubtless did not invalidate § 28-1202(1)(a). See State v. LaChapelle, 451 N.W.2d 689, 690 (Neb. 1990). But giving police officers unfettered discretion to stop and frisk anyone suspected of carrying a concealed weapon without some particularized suspicion of *unlawful* carrying conflicts with the spirit of the amendment. It is also contrary to a basic purpose of the Fourth Amendment's reasonableness standard -- to protect citizens from "the unconstrained exercise of discretion." Delaware v. Prouse, 440 U.S. 648, 663 (1979) (police must have "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered" to stop a vehicle on those grounds).

_____