# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1264

_____

United States of America

*Plaintiff - Appellee*

v.

Temarco Sartorio Pope, Jr., also known as Temarco Sartorio Pope

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 18, 2018
Filed: December 10, 2018

_____

Before WOLLMAN, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Around 4:00 a.m. one January morning, Des Moines police responded to a complaint about noise at an area motel. Outside the motel room in question, a police officer heard loud music and smelled marijuana, so he knocked on the door. When someone answered, the officer could see about thirty people crowded into what he agreed was "a pretty standard motel room." After receiving no answer to his question

about who had rented the room, the officer, having recognized some of the partygoers as gang members, ordered all the occupants to leave with their hands up.

Someone in the back of the room caught the officer's attention. The officer saw this man, later identified as Temarco Pope, Jr., place a black pistol in the waistband of his jeans and cover it with his shirt. The officer testified that, as Pope approached the officer to leave, he could see the outline of the gun through Pope's shirt. He then stopped Pope, who was the last partygoer to leave, and placed him in handcuffs. At that point, the officer disarmed Pope, who afterward admitted he did not have a permit for the gun.

After the government indicted Pope for being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), he moved to suppress the gun and any other evidence, including some of his statements to police, obtained from his detention at the motel. Pope maintained that the officer lacked a reasonable, articulable suspicion that he was engaging in criminal activity since the officer had no reason to suspect that he lacked a permit to carry the gun. The district court[1] disagreed and denied the motion to suppress. Pope then pleaded guilty but reserved his right to appeal the denial of his motion to suppress. He appeals and we affirm.

Police officers may briefly detain a person if they have a reasonable articulable suspicion that criminal activity is afoot; a mere hunch will not suffice. *United States v. Cotter*, 701 F.3d 544, 547 (8th Cir. 2012). We consider "the totality of the circumstances" when determining whether reasonable suspicion supported an officer's stop. *Id.* "We review reasonable-suspicion determinations de novo." *United States v. Cobo-Cobo*, 873 F.3d 613, 616 (8th Cir. 2017). The government maintains that the officer had reasonable suspicion that Pope was violating Iowa Code § 724.4(1),

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

which makes it an aggravated misdemeanor for someone to go "armed with a dangerous weapon concealed on or about the person."

The question of whether an officer may stop someone he reasonably believes is carrying a concealed gun was raised in *United States v. Jones*, 606 F.3d 964, 966–67 (8th Cir. 2010) (per curiam). We did not resolve that question, however, because we concluded that the officer there lacked a reasonable suspicion that the defendant had a gun in the first place. Judge Loken wrote a concurrence in which he opined that the officer could not have performed a stop even if he had a reasonable belief that the defendant was carrying a concealed weapon. He maintained that "giving police officers unfettered discretion to stop and frisk anyone suspected of carrying a concealed weapon without some particularized suspicion of *unlawful* carrying conflicts with the spirit of" the Nebraska Constitution's guarantee of the right to bear arms and the statutory exceptions to the prohibition of carrying concealed weapons, such as the exception for holders of concealed-carry permits. *Id.* at 968–69.

The issue surfaced again in *United States v. Harris*, where an officer encountered a man sleeping on a bench with a gun dangling from his pocket. 747 F.3d 1013, 1015–16 (8th Cir. 2014). The defendant maintained that the officer should not have seized the gun because he lacked reasonable suspicion of criminal activity. We showed some sympathy for the argument, even citing *Jones* and asserting parenthetically that *Jones* held "that the officers did not have a justification to stop the defendant merely because they suspected the defendant was carrying a firearm." *Id.* at 1016–17. But that is not what our court held in *Jones*; that was Judge Loken's position in concurrence. Nonetheless, our court in *Harris* stopped short of holding that the government lacked a reasonable suspicion of criminal activity, upholding the seizure of the gun instead because the officer was performing a community caretaking function in seizing it. *Id.* at 1017–19. As a result, the *Harris* court's statement about *Jones* does not bind our panel because it was dictum, and "we need not follow dicta." *Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013) (per curiam).

It is true that we asserted in another case that "the mere report of a person with a handgun is insufficient to create reasonable suspicion." *Duffie v. City of Lincoln*, 834 F.3d 877, 883 (8th Cir. 2016). But *Duffie* did not involve a concealed gun; the defendant there openly displayed a gun in a place where he could legally carry a gun openly without a permit. So it made sense for us to conclude that a report of someone openly displaying a firearm did not provide reasonable suspicion of criminal activity. And the information the police had did not sufficiently indicate that the defendant there had some disqualification, such as being underage, that precluded him from openly carrying a gun legally.

Most of the cases from outside our circuit on which Pope relies involve situations similar to the one in *Duffie*. For example, in *Northrup v. City of Toledo Police Department*, the Sixth Circuit determined that reasonable suspicion did not support an investigatory detention of a person whom police had stopped for openly carrying a gun in a state that requires no permit for doing so. 785 F.3d 1128, 1132–33 (6th Cir. 2015). Because carrying a gun openly was not a criminal offense, the court reasoned, there was no basis for the stop. *Id.*; *see also United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013); *United States v. King*, 990 F.2d 1552, 1555, 1558–59 (10th Cir. 1993). But that is not the situation we face. Carrying a concealed weapon in Iowa is a criminal offense, and possession of a concealed-weapons permit is merely an affirmative defense to a charge under § 724.4(1). *See State v. Leisinger*, 364 N.W.2d 200, 202 (Iowa 1985); *State v. Bowdry*, 337 N.W.2d 216, 218 (Iowa 1983). In other words, carrying a concealed weapon in Iowa is presumptively criminal until the suspect comes forward with a permit, *see United States v. Gatlin*, 613 F.3d 374, 378–79 (3d Cir. 2010), and we see no reason why the suspect's burden to produce a permit should be any different on the street than in the courtroom. We thus think the officer had reasonable suspicion that criminal activity was afoot when he personally observed Pope place the gun in his waistband. *See United States v. Dembry*, 535 F.3d 798, 800–01 (8th Cir. 2008).

And for what its worth, the Iowa Legislature seemingly contemplated the kind of stop that the officer performed here when it passed § 724.4(1) by providing that the prohibition against carrying a concealed weapon does not apply to one "who displays to a peace officer on demand a valid permit." Iowa Code § 724.4(4)(i). That an officer may "demand" to see a permit would seem to assume that the officer may briefly seize the person to make such a demand. It would be odd to say that an officer may "demand" to see a permit during the course of a consensual encounter not amounting to a seizure. This legislative assumption is perhaps some evidence that a detention like the one involved here was considered reasonable in the political and social environment in which the statute was enacted.

Pope argues that, even if the officer had reasonable suspicion to stop him, the officer did not have reasonable suspicion to frisk him for weapons as well. The Court in *Terry v. Ohio* held that an officer may frisk a suspect he believes is "armed and dangerous." 392 U.S. 1, 27 (1968). Pope maintains that the officer merely knew that he was armed but had no reason to believe that he was also dangerous, especially since many law-abiding citizens carry guns legally nowadays.

We believe that the Supreme Court has already authorized police officers to frisk a suspect reasonably believed to be armed even where it could be that the suspect possesses the arms legally. In *Adams v. Williams*, the Court emphasized that the purpose of a *Terry* frisk is not to discover evidence of a crime "but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law." 407 U.S. 143, 146 (1972). The Supreme Court has also intimated at least twice that being armed with a gun necessarily means that the suspect poses a risk to an officer. In *Terry*, the Court said that a suspect's being armed "thus presented a threat to the officer's safety." 392 U.S. at 28. In another case the Court observed that a bulge in a suspect's jacket "permitted

the officer to conclude that [the suspect] was armed and thus posed a serious and present danger." *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977).

Pope argues that we need not give *Adams*, *Terry*, or *Mimms* much weight because, he says, the Court decided them in an era in which criminals were the primary carriers of guns and thus almost always dangerous. Even if this factual assumption is true, a matter on which we express no view, it is the Supreme Court's prerogative alone to overrule its cases, regardless of whether doubts have been raised as to their continuing vitality. *See Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam). And even if the Court decided these cases in a different legal environment, we think it remains reasonable to allow an officer to frisk someone whom the officer has lawfully stopped and whom the officer reasonably believes is armed. As the en banc Fourth Circuit recently explained, "[t]he presumptive lawfulness of an individual's gun possession in a particular State does next to nothing to negate the reasonable concern an officer has for his own safety when forcing an encounter with an individual who is armed with a gun and whose propensities are unknown." *United States v. Robinson*, 846 F.3d 694, 701 (4th Cir. 2017).

Pope finally maintains that the frisk was unreasonable since the officer had already handcuffed Pope, which, he asserts, obviated any danger that he might have presented. We disagree. Handcuffs limit but do not eliminate a person's ability to perform harmful acts. *United States v. Sanders*, 994 F.2d 200, 209 (5th Cir. 1993). Though it is more difficult for him to do so, a person in handcuffs can still use a weapon to injure, and, of course, handcuffs can sometimes fail. *Id.* Further, unless Pope were to go home in the officer's handcuffs, at some point the officer would have to remove them, at which point Pope would have unfettered access to his gun. *See id.* The Fourth Amendment does not require officers to submit themselves to such dangers.

Finally, we note that Pope appears to raise a Second Amendment challenge to § 724.4(1) in his reply brief. Because he failed to raise the argument in his opening brief, we leave that issue for another day. *See United States v. Grace*, 893 F.3d 522, 525 (8th Cir. 2018).

Affirmed.

_____