# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-2831

_____

United States of America

*Plaintiff - Appellee*

v.

Alonzo Miller

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 17, 2025
Filed: December 1, 2025

_____

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Alonzo Miller entered a conditional guilty plea after the district court[1] denied his motion to suppress the fruits of a lawful traffic stop and subsequent search of his person and vehicle. He now appeals that denial, arguing that the officers unlawfully

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

extended the stop and that the subsequent frisk was not supported by reasonable suspicion. We affirm.

## I. *Background*

Late in the evening on January 10, 2022, Kansas City, Missouri Police Officers Stephen Justin and Daniel Trainor noticed a pickup truck with a broken headlight and an expired license plate and initiated a lawful traffic stop. The officers approached the vehicle and spoke with the driver, Alonzo Miller, and a female passenger. Miller provided his name and told Officer Justin that he was not the truck's owner. Miller disclosed the owner's name, which Officer Justin recognized from previous traffic stops.

As the stop continued, Miller answered questions and provided his driver's license, but he could not provide proof of insurance. Miller disclosed where he began driving. The officers recognized the location as an area that frequently generated service calls. It had a reputation for unlawful activities such as prostitution, drug-related incidents, and trafficking of stolen property. Specifically, the officers knew a potential drug dealer either at the exact address or one nearby. However, they could not recall whether that individual was still dealing drugs, and they had never caught the dealer selling drugs from the address. During this conversation, Officer Justin noticed signs of nervousness from Miller. These included widened eyes, dilated pupils, trembling hands, frequent scans of the truck, and dropping ash on himself from a cigarette that he was smoking.

The officers then returned to their car and performed a computer check on Miller and the passenger. This check revealed that neither occupant had any arrest warrants, but that Miller was under probation supervision and on parole for a second-degree felony assault, coupled with a firearm-related offense linked to the same incident. During the computer check, the officers discussed their perception of an obvious age difference between Miller and his female passenger. The age difference, in conjunction with the time of night and the area, made them suspect potential illicit sexual activity.

-2-

While running the searches, the officers decided to request consent to search the vehicle. Officer Justin admitted that he did not believe that he had probable cause at this point to search the vehicle, but he believed that he had reasonable suspicion of potential criminal activity to continue the stop. Officer Justin returned to the truck and revealed to Miller the computer search results. He advised Miller that the vehicle's tags were not valid but that he was willing to give him only a warning for both the lack of proof of insurance and the expired tags. Officer Justin then asked Miller if there was "anything illegal in the car or anything I should know about," and Miller responded curiously, stating "something under there," while pointing to indicate that there was an item under the front seat. R. Doc. 47, at ¶ 20. While still in possession of Miller's driver's license, Officer Justin asked Miller whether "it would be okay if I took a look around." *Id.* Miller responded affirmatively. Miller thereby gave consent to search the truck approximately eight and a half minutes into the stop.

As Officer Justin opened the vehicle door, he attempted to direct Miller toward the truck bed along the driver's side by leaving an open passage toward the bed. Rather than take the hint, Miller instead attempted to maneuver toward the front of the truck and behind Officer Justin. The officers found Miller's exit strategy odd, prompting Officer Justin to become suspicious of Miller's motives in doing so. Such motives could have included gaining an advantage for either fighting or fleeing. Rather than allow Miller to the front of the truck, Officer Justin guided Miller to the truck bed. The officer directed Miller to place his hands on the sides of the truck bed and asked him, "[D]o you have anything on you, anything that's going to poke, prick, or stab me?" *Id.* at ¶ 24. Miller again pointed toward the front passenger seat and answered, "Ugh, I got, look up under the seat." *Id.* Officer Justin found Miller's behavior strange and requested that Miller place his hands behind his back.

Concerned for the safety of himself and others present, Officer Justin concluded that he should frisk Miller to ensure that Miller did not possess something potentially dangerous. Officer Justin emphasized that Miller was not under arrest, but only being briefly detained. Miller started to make his left hand available for

Officer Justin to handcuff, but then Miller tensed up and pulled it away. Miller again indicated that something illegal was under the seat, moved his right hand from the truck bed, and put it in his right coat pocket. Immediately, the officers heard a loud pop that they believed to be a gunshot. Miller had a firearm in his right coat pocket that discharged.

Upon the discharge of the firearm, the officers arrested Miller. Officer Justin believed that Miller was not compliant and kept attempting to pull away. After his arrest, Miller claimed that the gun belonged to his niece who had left it in the truck. He stated that he was on his way to return it when the officers stopped him. The officers issued Miller tickets for operating a vehicle without a license and failure to provide insurance and then took Miller into custody.

Miller was subsequently indicted on one count of being a felon in possession of a firearm. Miller moved to suppress the evidence obtained during the traffic stop and his arrest on the grounds that (1) the officers unlawfully prolonged the stop and extended the scope, rendering any consent provided involuntary; and (2) the officers lacked reasonable suspicion to believe that he was armed and dangerous, making a search or frisk unlawful.

The magistrate judge recommended that the motion be denied. The magistrate judge found that (1) the stop was lawful and facts developed during the stop indicated that Miller may be a threat or that additional criminal activity was present, providing reasonable suspicion to extend the stop and pat down Miller; (2) Miller knowingly and voluntarily consented to the vehicle search, thereby consenting to the extension of the traffic stop; and (3) Miller's resistance to arrest committed a new and separate offense, establishing lawful grounds for the search and recovery of the weapon and other incriminating information. As relevant here, in finding reasonable suspicion, the magistrate judge provided the following reasoning:

> Considering the facts collectively, this situation arose out of a nighttime traffic stop. When questioned about the presence of anything

-4-

dangerous or illegal within the vehicle, Defendant on several occasions alluded to an item beneath the seat. Further, the vehicle was registered to another individual. Once Officer Justin learned Defendant's identity and was able to run it through MULES, he knew that Defendant was on probation and parole for a violent felony (assault in the second degree) and a related gun offense. These factors contributed to Officer Justin and Officer Trainor's suspicion that criminal activity was afoot, and Defendant might be armed, presenting a threat to officer safety.

These factors are assessed in connection with Defendant's noticeable signs of nervousness, the location from which Defendant's vehicle had come, the location of the stop, the late night hour and cold weather, the suspicion of the passenger being a possible prostitute, the failure to present insurance, Defendant's odd exit from the vehicle, Defendant's indication of something dangerous within the vehicle, and Defendant's resistance while being asked to put his hands on the truck bed.

R. Doc. 47, at 16–17 (citation modified). The district court agreed with the report and recommendation and adopted the magistrate judge's findings of fact and conclusions of law, denying Miller's motion to suppress. Miller conditionally pleaded guilty. This appeal followed.

## II. *Discussion*

Miller argues that the officers lacked reasonable suspicion to extend the scope of the stop, search the truck, or search his person. "When reviewing the denial of a motion to suppress evidence, we review legal conclusions de novo and factual findings for clear error." *United States v. Puckett*, 139 F.4th 730, 737 (8th Cir. 2025) (quoting *United States v. Magallon*, 984 F.3d 1263, 1276 (8th Cir. 2021)).

"A traffic stop is . . . subject to the Fourth and Fourteenth Amendments' protections against unreasonable searches and seizures." *United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*,

543 U.S. 405, 407 (2005). Upon the completion of the initial mission, further detention of the driver "would be unreasonable, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention' or unless the continued encounter is consensual." *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007) (quoting *United States v. Jones,* 269 F.3d 919, 925 (8th Cir. 2001)); *see also United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022) ("The officers may, however, extend the stop if they develop reasonable suspicion of criminal activity.").

"Reasonable suspicion 'requires less than probable cause of criminal activity, but the suspicion cannot be based on an "inarticulate hunch[]."'" *United States v. Lowry*, 935 F.3d 638, 641 (8th Cir. 2019) (alteration in original) (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)). While reasonable suspicion may be based on "time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence," *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995), "facts that are 'shared by countless, wholly innocent persons' cannot give rise on their own to reasonable suspicion." *Lowry*, 935 F.3d at 641 (quoting *United States v. Jones*, 606 F.3d 964, 967 (8th Cir. 2010)). "We review the totality of the circumstances to determine if an officer had reasonable suspicion to extend a traffic stop." *Allen*, 43 F.4th at 908.

Miller challenges the magistrate judge's finding of reasonable suspicion, taking particular issue with its reliance on factors occurring after the officers extended the stop. The magistrate judge based its finding of reasonable suspicion upon Miller's odd exit from the vehicle, his reference to something dangerous in the vehicle, and his resistance to detention. These three facts occurred after the request to search the vehicle, but these facts are part of a larger totality of circumstances relied on by the magistrate judge. Miller argues that these circumstantial facts were largely innocent and not suspicions. In support, Miller cites various cases,[2] finding

---

[2]*See Jones*, 269 F.3d at 928 (refusing to find reasonable suspicion based only on nervousness and an inconsistent answer); *United States v. Freeman*, 735 F.3d 92, 101 (2d Cir. 2013) (declining to find reasonable suspicion for an initial stop based

certain of these facts do not rise to reasonable suspicion when only a few of the factors were present at a time. Miller's attempt to isolate each fact and find them innocent ignores our requirement to review reasonable suspicion under the totality of the circumstances. *United States v. Brown*, 60 F.4th 1179, 1183 (8th Cir. 2023) ("[T]he totality-of-the-circumstances test precludes the sort of divide-and-conquer analysis that [the defendant] attempts . . . ." (citation modified)).

First, looking at the totality of the circumstances, the officers had reasonable suspicion to ask Miller about whether there was anything dangerous in the vehicle. Their reasonable suspicion was supported by the following: (1) the vehicle was registered to another individual, (2) Miller was on probation and parole for a gun-related offense and violent felony, (3) Miller could not produce insurance, (4) Miller was driving on a side street rather than a more populated street, (5) Miller's nervousness, (6) Miller had left a high-crime area, (6) the stop occurred late on a cold evening, and (7) the officers had sex-offense concerns related to Miller's female passenger. We have previously upheld many of these facts as factors giving rise to reasonable suspicion. *See, e.g.*, *United States v. Lemons*, 84 F.4th 766, 770 (8th Cir. 2023) (after-midnight encounter with defendant); *United States v. Campbell-Martin*, 17 F.4th 807, 814 (8th Cir. 2021) (defendant was "nervous and fidgety"); *United States v. Sanchez*, 955 F.3d 669, 675 (8th Cir. 2020) (vehicle owner lending vehicle to individual without license when vehicle has expired tags and driver is out of state in the middle of the night); *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) (prior felony conviction and some history involving drugs and violent behavior); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (high-crime area); *Dawdy*, 46 F.3d at 1429 ("time of day or night, location of the suspect parties, and the parties'

___

solely on the fact that it was late at night and in a "high crime area"); *United States v. Gray*, 213 F.3d 998, 1001 (8th Cir. 2000) (holding no reasonable suspicion when the defendant was in a high-crime area before 10:00 p.m. in cold weather near prostitutes but not speaking to them); *Lowry*, 935 F.3d at 641 (holding no reasonable suspicion when the initial questioning was based only on the defendant waiting at a bus stop in a high-crime area, wearing heavy clothes, and making eye contact with an officer then walking behind the bus shelter).

behavior when they become aware of the officer's presence"). Thus, while these "factors . . . individually may be consistent with innocent behavior, when taken together, can give rise to reasonable suspicion." *Stewart*, 631 F.3d at 457.

Second, the officers had reasonable suspicion to search the truck and ask Miller to exit it. Miller's affirmative answer when asked about anything illegal in the pickup provided a valid basis for removing Miller from the truck and to search it.

Third, the officers had reasonable suspicion to frisk Miller. In addition to the facts justifying the officers' suspicion to extend the stop and Miller's answer that there might be something illegal in the truck, Miller exited the truck in a way that made Officer Justin concerned that Miller was trying to get behind him. Miller also then resisted while being asked to put his hands on the truck bed. These events led Officer Justin to believe that a frisk of Miller was necessary for officer safety and for the safety of others present.[3]

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's decision.

_____

_____

[3]Miller also contends that the officers unlawfully extended the traffic stop, that he did not knowingly and voluntarily consent, and that the district court's application of the attenuation doctrine was improper. Because the officers had reasonable suspicion to lawfully extend Miller's stop, we decline to address whether they also required reasonable suspicion to question Miller about contraband or weapons in the truck. Further, the officers' reasonable suspicion also negates his lack-of-consent and attenuation-doctrine arguments.