# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3941

_____

United States of America

*Plaintiff - Appellee*

v.

Louis A. Hardison, also known as Mohammed L. Carrol

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: March 9, 2017
Filed: June 14, 2017

_____

Before RILEY,[1] Chief Judge, GRUENDER, Circuit Judge, and SCHREIER,[2]
District Judge.

_____

RILEY, Chief Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

Louis Hardison appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), arguing the district court[3] erred in combining an evidentiary hearing on his motion to suppress with his bench trial and in not excluding all evidence obtained as a result of a search of his home. We affirm, finding (1) no error in the procedure the district court used in this case, and (2) Hardison voluntarily consented to the search. See 28 U.S.C. § 1291 (appellate jurisdiction).

## I.      BACKGROUND

In the early morning hours of November 27, 2013, Dushawnne Hoyt reported a domestic disturbance involving a firearm. Officers from the Neosho Police Department (Missouri) responded to the call. Hoyt told officers Hardison put a knife to her throat, threatened to kill her, and then held a gun to her head, again threatening to kill her. Officer Trent Gold approached Hardison, who was then standing inside his residence at the front door, to ask Hardison if they could speak inside the home. Hardison replied, "sure."

Another officer, Sergeant Brad Fienen, arrived on the scene later while Officer Gold was inside the home with Hardison. Sergeant Fienen entered the residence and asked Hardison if he had a gun inside the home. Hardison pointed to a green duffel bag and told Sergeant Fienen, "The only gun I have is in there." Sergeant Fienen secured the gun from the bag and, because he observed it did not match Hoyt's description of the gun Hardison threatened her with, asked Hardison if he had another firearm. After hesitating, Hardison told the officers there was another gun, led the officers to the bedroom, and said while pointing in the room, "In the ductwork, there's a gun down there. You can go get it." Sergeant Fienen removed the grate to the air conditioning and retrieved a second firearm, which did match Hoyt's

---

[3]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

description.  Hardison told the officers he knew he was not supposed to be in possession of a firearm as a felon and he knew he was going to prison.

The grand jury returned a one-count indictment charging Hardison with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court issued a scheduling and trial order on December 19, 2014, requiring the parties to file all pretrial motions on or before twenty days from that date.  Hardison's bench trial was scheduled to begin June 15, 2015.  On June 12, 2015, the Friday before Hardison's Monday trial date and well-past the court's deadline for filing pretrial motions, Hardison filed a motion to suppress all evidence obtained "as a result of the November 27, 2013, detention, seizure, arrest, and search of [Hardison]."  Hardison "request[ed] an evidentiary hearing be granted *or that the matter be permitted to be taken up with his bench trial*."  (Emphasis added).

Hardison's bench trial commenced on schedule.  Citing concerns for efficiency and fairness "given the timing," the district court "decided the best way to take up . . . the propriety of the evidence is to simply receive evidence on the suppression motion at the same time [it] hear[s] the evidence related to the trial and then the Court will not consider that evidence that it believes should be suppressed if the Court reaches that conclusion."  Neither party objected to proceeding in this manner, a manner Hardison initially had proposed, and counsel for both parties explicitly agreed to the procedure.

The government introduced several exhibits of evidence obtained as a result of the search of Hardison's home, and the district court noted it would "assume that [Hardison] ha[s] an objection to the exhibits and the testimony of what happened after [the officer] goes in the home," and would not "make any final ruling on the admissibility of that evidence" until after the trial was completed.  Hardison was the only witness for the defense.  Neither Hardison nor his attorney clarified that Hardison intended his testimony to be limited to the issue of suppression.  Hardison

-3-

testified he did not consent to a search and he had sole dominion and control over the residence. Hardison's attorney objected to only one question—"Isn't it true that the officer found weapons and firearms at your home on November 27, 2013?"[4]—and the district court accepted Hardison's answer pending its decision as to the suppression motion.

Two weeks after the trial, the district court issued an order denying Hardison's motion to suppress, finding Hardison voluntarily consented to the search. In a separate order, the district court found Hardison knowingly possessed firearms, as evidenced by Hardison telling "the officers where in the residence the weapons could be found. The firearms were found in [Hardison's] home, he testified that he placed them there, and he testified that he resides alone and exercises complete dominion and control over his residence." The district court found Hardison guilty of being a felon in possession of a firearm. Hardison filed numerous pro se motions, including a pro se motion for a new trial, all of which the district court denied. Hardison filed a timely notice of appeal "from the judgement [sic] and sentence" of the district court.

## II. DISCUSSION
### A. Combined Evidentiary Hearing and Bench Trial

Hardison asserts the combined evidentiary hearing and bench trial and the use of his suppression testimony in assessing his guilt amount to constitutional, structural, and plain error. Hardison first notes the district court erred in "failing to rule on defendant['s] pretrial Motion to Suppress before trial." It is within the district court's discretion not to hold an evidentiary hearing at all, see United States v. Losing, 539 F.2d 1174, 1177 (8th Cir. 1976), and, while "[t]he court must decide every pretrial

---

[4]This is a negative and confusing question for the witness and fact finder and also invades the province of the fact finder as to what is true. A proper question would be: "Did the officer find firearms at your home on November 27, 2013?"

motion before trial unless it finds good cause to defer a ruling," Fed. R. Crim. P. 12(d), there is certainly good cause to defer a ruling where the defendant files his motion the Friday before his Monday bench trial. See United States v. Dittus, 453 F.2d 1335, 1336 (3d Cir. 1972) (finding good cause to disallow a suppression hearing where an evidentiary hearing would have delayed the start of trial). Under the circumstances of this case, the short time period before trial and the concern for efficiency in presenting evidence support the district court's decision to combine the evidentiary hearing with Hardison's bench trial, and to defer ruling on the motion to suppress until all evidence had been presented.[5]

We likewise find no structural error "undermining the fairness of a criminal proceeding as a whole," United States v. Dominguez Benitez, 542 U.S. 74, 81 (2004), as Hardison consented to, and indeed suggested, the specific procedure used by the district court. This is not one of the "very limited class of cases" amounting to structural error requiring automatic reversal. Johnson v. United States, 520 U.S. 461, 468 (1997); see also Neder v. United States, 527 U.S. 1, 8 (1999) (listing examples of structural error, including "complete denial of counsel," "racial discrimination in selection of grand jury," and "denial of public trial").

Hardison claims a constitutional error occurred when the district court improperly considered his suppression testimony for the purpose of determining his guilt. "[W]hen a defendant testifies in support of a motion to suppress evidence on

---

[5]We note it would have been within the district court's discretion to refuse to consider Hardison's motion to suppress because the motion was untimely, having filed the motion five months after the deadline for filing pretrial motions. See Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a [pretrial] motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause."); see also United States v. Trancheff, 633 F.3d 696, 698 (8th Cir. 2011) ("The desire to suppress incriminating evidence and the retention of new counsel are not by themselves sufficient to establish good cause to justify relief from a waiver of a defense, objection, or request under Rule 12.").

Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Simmons v. United States, 390 U.S. 377, 394 (1968). Hardison expressly requested his motion to suppress "be permitted to be taken up with his bench trial," and Hardison's attorney affirmatively consented to the procedure on the day of trial. The district court did assume Hardison had "an objection to the exhibits and the testimony of what happened after he goes in the home" due to Hardison's motion to suppress such evidence, and Hardison's attorney made a "limited objection" to the admissibility of Hardison's answer to one government question during cross-examination, because Hardison's answer "may get into evidence that would be suppressible." It is not clear from the record whether the "limited" objection was intended to limit Hardison's testimony to the motion to suppress, or whether the objection was merely preserving Hardison's objection to the use of any evidence obtained as a result of the search.

Hardison contends this objection was an "attempt[] to limit the testimony for the purpose of the suppression motion only," but acknowledged at oral argument it was not clear if this objection was based on the potential Simmons violation. Hardison never clearly stated he was objecting to the potential use of Hardison's testimony to evaluate his guilt. Cf. United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993) ("'Preserving an issue is a matter of . . . clearly stating the grounds for the objection, so that the trial court has an opportunity to prevent or correct the error in the first instance.'" (quoting United States v. Thornburg, 844 F.2d 573, 575 (8th Cir. 1988))). At no point, either before or during Hardison's testimony, did Hardison or his attorney explicitly request Hardison's testimony be limited only to the motion to suppress.[6] Simmons expressly allows a fact finder to consider testimony

---

[6]Hardison asserted at oral argument the district court was obligated to warn him the court would use his testimony to determine the merits of the case and, without such a warning, any waiver was not fully knowing and voluntary. Hardison did not fully raise and address this argument in his opening brief and was unable at oral argument to cite to any support for the proposition Simmons requires a knowing

introduced on a motion to suppress also during the merits of the case if the defendant fails to object to such use. Simmons, 390 U.S. at 394; cf. United States v. Polk, 574 F.2d 964, 965 (8th Cir. 1978) (reasoning the defendant's testimony at the suppression hearing could be considered at the subsequent bench trial where "counsel had agreed that evidence presented at the suppression hearing could be considered by the trial court in deciding the merits").

Hardison further argues, even in the absence of any structural or constitutional error, the district court's use of his testimony to determine his guilt was plain error. See United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Because there was sufficient evidence to find Hardison guilty of the charged offense without considering his testimony, there was no plain error "'seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Young, 470 U.S. 1, 15 (1985)).

**B.     Denial of Motion to Suppress and Motion for a New Trial**

Hardison next contends the evidence obtained during the search of his home should have been suppressed because the officers did not have a warrant and Hardison did not voluntarily consent to the search.

Hardison claims his consent was limited to allowing Officer Gold inside his home for a conversation, and the officers exceeded the scope of his consent when they searched. Consent does not need to be explicit to be valid. See United States v. Lakoskey, 462 F.3d 965, 973 (8th Cir. 2006). "The precise question is not whether [the defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001).

_____

waiver of constitutional rights, and we decline to address this issue today.

Hardison replied "sure" to the officer's request to speak with him inside the home. When inside and asked if "there was a gun in the residence," Hardison pointed to a green duffel bag in the hallway and said, "The only gun I have is in there." Hardison did not object to a subsequent search of that bag. When the officer asked about another gun, explaining the gun in the duffel bag was not the firearm Hoyt had described, Hardison directed the officers to where he kept a second gun in his bedroom air conditioning ductwork. Hardison told the officers they could "go get it." Even if Hardison never expressly consented to the search of his bag that uncovered the first firearm, he was "present and fail[ed] to object to the continuation of a search," which is "circumstantial evidence [that] provide[s] proof that the search conducted was within the scope of consent." United States v. Beckmann, 786 F.3d 672, 678 (8th Cir. 2015). Hardison's conduct would cause a reasonable person to believe he consented to the search.

This consent was also voluntary under the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Hardison notes the officers never advised him he had the right to refuse consent, yet, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." Id. And contrary to Hardison's suggestion, the fact multiple officers were present when Hardison consented does not, by itself, demonstrate Hardison was unduly coerced to consent. See United States v. Drayton, 536 U.S. 194, 205 (2002). Officer Gold testified he did not yell, draw his weapon, or otherwise threaten or intimidate Hardison in any way, and Officer Gold described Hardison as polite and not agitated during their conversation. The police report does note Hardison exhibited signs of being intoxicated, but "the evidence does not suggest that he was so intoxicated that he was not 'competent to understand the nature of his acts.'" United States v. Willie, 462 F.3d 892, 896 (8th Cir. 2006) (quoting United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986)). The remaining characteristics of Hardison and the situation—Hardison's age of 52 years, his prior experience with law enforcement,

the fact Hardison was not restrained when he gave consent, and his intelligence demonstrated by multiple pro se motions arguing Fourth Amendment issues—show the district court did not clearly err in finding Hardison voluntarily consented. See United States v. Garcia, 613 F.3d 749, 753 (8th Cir. 2010) ("Whether consent is voluntary is a question of fact, reviewed for clear error."). The district court properly denied Hardison's motion to suppress the evidence and did not abuse its discretion in denying his motion for a new trial.[7]

## III.  CONCLUSION

Because the combined evidentiary suppression hearing and bench trial, under the circumstances, was not error, structural or otherwise, and Hardison voluntarily consented to the search of his home, we affirm.

_____

_____

[7]On appeal, Hardison appears to argue the officers needed a warrant to enter his house because, at the time of the search, they already had probable cause to arrest Hardison. Hardison did not raise this argument in his suppression motion or motion for a new trial, but, even if he had, the district court still would not have abused its discretion in denying the motion because the officers were not entering Hardison's home to make an arrest and, as discussed above, Hardison voluntarily consented to the search. See Payton v. New York, 445 U.S. 573, 576 (1980) ("[T]he Fourth Amendment to the United States Constitution . . . prohibits the police from making a warrantless and *nonconsensual* entry into a suspect's home in order to make a routine felony arrest." (Emphasis added)).