# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1649
_____

United States of America

*Plaintiff - Appellee*

v.

Terrance Payne Hayes

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: January 16, 2026
Filed: May 11, 2026
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Following a home invasion that left Terrance Hayes injured and the intruder dead, Hayes told investigators he had shot the intruder in self-defense using a firearm located in his home. Based on his admissions, Hayes was charged with being a felon in possession of a firearm and possessing a stolen firearm. Hayes moved to suppress the statements he made to law enforcement, arguing they violated his Fifth

Amendment right against self-incrimination. After the district court[1] denied Hayes's motion to suppress, he conditionally pled guilty and was sentenced to a 90-month term of imprisonment. Hayes appeals the district court's denial of his motion to suppress and the substantive reasonableness of his sentence. We affirm the denial of Hayes's motion to suppress and dismiss the appeal of his sentence.

## I.    BACKGROUND

In the early morning hours of July 17, 2023, Sioux City police officers responded to a 911 call from Hayes's residence indicating that an intruder had broken into the home. The intruder, armed with a knife, stabbed Hayes multiple times. Hayes managed to retrieve a firearm and shoot the intruder. When officers arrived, both Hayes and the intruder were transported to the hospital. Hayes was severely injured and required surgery, while the intruder died from his injuries. A search of Hayes's residence revealed a semiautomatic handgun underneath a couch.

Approximately an hour after the incident, Detective Justus Knudsen and another detective from the Sioux City police department interviewed Hayes at the hospital while he was awaiting surgery. During the six-minute interview, Hayes told detectives that he did not know the person who broke into his home or the reason for the attack. Hayes denied owning or possessing a gun, explaining that he shot the intruder with a gun he took from the intruder's waistband.

The next day, Detective Knudsen and two other detectives returned to conduct a follow-up interview of Hayes. When the officers arrived, Hayes was confined to a hospital bed recovering from his surgery. Hayes agreed to talk with the detectives and during the interview, which lasted an hour and twenty minutes, Hayes told the

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, adopting the Report and Recommendation of the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge for the Northern District of Iowa.

detectives that his wife began screaming when an intruder broke into their home. Hayes said he rushed into the living room to find a man armed with two knives. Hayes once again asserted that he was able to obtain a firearm from the intruder's waistband and shoot him while the two men struggled and the intruder was stabbing him.

The detectives were skeptical that Hayes had taken the gun from the intruder during a knife fight and pressed him to explain exactly how the gun had come into his possession. After repeated questioning, Hayes told the detectives that his friend "Mikey" had brought the gun to his house a week before the incident and that the gun was on the television stand at the time of the break-in. Over an hour into the interview detectives offered to leave and let Hayes rest, but Hayes insisted he was okay to continue talking. Detectives continued talking with Hayes about the break-in for approximately ten more minutes before leaving.

One week later, on July 24, Detective Knudsen visited Hayes at his home in Sioux City to obtain a release for Hayes's medical records. During that visit, Hayes again denied having a gun, and Detective Knudsen reminded Hayes that he had already told detectives the gun was in his home before the break-in.

On August 11, detectives transported Hayes to the Sioux City police station for another interview. Detective Knudsen read Hayes his <u>Miranda</u> rights and told him the detectives still considered him a victim. Hayes signed a <u>Miranda</u> waiver and continued talking with Detective Knudsen. During the interview, Hayes repeatedly told Detective Knudsen that the gun belonged to the intruder.

About 50 minutes into the interview, Hayes told Detective Knudsen that he had too much going on in his head and that he was "ready to go" home. Detective Knudsen left the interview room to see if Hayes's wife, who was also being interviewed by detectives, was finished and ready to leave. Hayes asked to wait in the hallway, but Detective Knudsen asked him to remain in the interview room.

-3-

Hayes then told Detective Knudsen, "That's why I don't like coming down here. If I'm not being detained, I would like to go."

After a few minutes, Detective Knudsen returned to the interview room along with Detective Michael Sitzman. Detective Knudsen explained that they had a few more questions about Hayes's prior statements about how he got the gun. Detective Sitzman told Hayes they did not believe that he took the gun from the intruder's waistband. Detective Sitzman warned Hayes that if he continued to lie, they would shift the focus of their investigation from self-defense to murder. Hayes responded that he did not commit murder and stated, "If I'm not being detained, I would like to go." Detective Sitzman cautioned Hayes, "Then we're going to have to switch gears, and I'm just warning you that we're going to probably turn this into a murder investigation."

Detective Sitzman opened the door to the interview room and Sergeant John Sanders entered. Hayes again denied having the gun in his home. Sergeant Sanders explained to Hayes that the detectives were not trying to "jam him up" and simply needed to know where the gun was and how he got it so they could determine whether the shooting was self-defense or murder. Sergeant Sanders then left the interview room, and Hayes continued talking with Detectives Knudsen and Sitzman for another 20 minutes about the gun and how it came into his possession. After the interview concluded, Detective Knudsen drove Hayes and his wife home.

On November 16, 2023, Hayes was indicted on two counts: Count One— possession of a firearm by a felon, drug user, and person convicted of domestic violence, in violation of 18 U.S.C. §§ 922(g)(1), (3), (9) and 924(a)(8); and Count Two—possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Hayes moved to suppress his statements to detectives during the July 18 interview at the hospital and the August 11 interview at the police station, arguing they were made in violation of his Fifth Amendment right against self-incrimination. The district court denied his motion, determining Hayes was not in custody during the July 18 hospital interview and his statements on August 11 were voluntary.

-4-

Hayes entered a conditional guilty plea to Count One, reserving only the right to appeal the denial of his motion to suppress. Hayes's advisory Sentencing Guidelines range was determined to be 57 to 71 months, but based on his extensive criminal history, the district court varied upward and sentenced Hayes to a 90-month term of imprisonment followed by three years of supervised release. Hayes appeals the denial of his motion to suppress and the substantive reasonableness of his sentence.

## II.  DISCUSSION

### A. Motion to Suppress

We apply a mixed standard of review to a district court's denial of a motion to suppress. United States v. Lowry, 935 F.3d 638, 641 (8th Cir. 2019). "The trial court's findings of fact are reviewed for clear error and its denial of the suppression motion is reviewed *de novo*." Id.[2]

#### 1. *July 18 Hospital Interview*

Hayes contends the statements he made to detectives while hospitalized should be suppressed because he was in custody but not read his Miranda rights prior to questioning. A suspect subject to custodial interrogation "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda v. Arizona, 384 U.S. 436, 479 (1966). Even

---

[2]Because district courts have discretion to permit untimely pretrial motions upon a showing of good cause, see Fed. R. Crim. P. 12(c), and the district court found good cause to allow the untimely filing, we decline the government's request to decide the issue under the abuse of discretion standard. See United States v. Hardison, 859 F.3d 585, 589 (8th Cir. 2017) (district court was within its discretion to consider a motion to suppress filed one day before trial).

so, police officers do not need to administer <u>Miranda</u> warnings every time they question someone. <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977). Instead, warnings are required only when the person's freedom is so limited as to render him "in custody." <u>United States v. LeBrun</u>, 363 F.3d 715, 720 (8th Cir. 2004).

"The ultimate question in determining whether a person is in 'custody' for purposes of <u>Miranda</u> is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>United States v. Williams</u>, 760 F.3d 811, 814 (8th Cir. 2014) (internal quotations omitted). "To resolve this inquiry, we consider the circumstances surrounding the questioning and whether, given those circumstances, a reasonable person would have felt free to terminate the questioning and leave." <u>United States v. Ferguson</u>, 970 F.3d 895, 901 (8th Cir. 2020).

We have used a nonexclusive six-factor analysis to determine whether an individual is in custody for purposes of <u>Miranda</u>. <u>United States v. Griffin</u>, 922 F.2d 1343 (8th Cir. 1990). Under the <u>Griffin</u> analysis, courts consider:

> (1) [W]hether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

<u>Id.</u> at 1349. We do not apply the test mechanically, merely counting the factors on each side; rather, we consider the totality of the circumstances to determine whether a person was in custody. <u>United States v. Czichray</u>, 378 F.3d 822, 827 (8th Cir. 2004).

-6-

Applying the <u>Griffin</u> factors, we conclude that the district court did not err when it found that Hayes was not in custody during the July 18 hospital interview. The district court determined that the purpose of the interview was for detectives to learn the details of the home invasion. While Hayes contends the detectives should have advised him that he could decline to speak with them and could ask them to leave, this "general questioning of citizens in the fact-finding process" is not the type of custodial interrogation to which <u>Miranda</u> applies. <u>Miranda</u>, 384 U.S. at 477; <u>see also</u> <u>Feltrop v. Bowersox</u>, 91 F.3d 1178, 1182 (8th Cir. 1996) (interviews are non-custodial when the purpose is to "shed light on an unsolved crime"). Throughout the interview, detectives emphasized that they viewed Hayes as the victim and were merely trying to understand the circumstances and potential motive for the break-in. Such a fact-finding interview is not typically associated with custodial interrogation. <u>See</u> <u>United States v. Jamison</u>, 509 F.3d 623, 632 (4th Cir. 2007) (questioning was non-custodial where defendant was interviewed as a victim about the circumstances surrounding a shooting).

The district court also found that even though the detectives initiated the interview, Hayes talked freely with the detectives and even insisted that they stay and continue the interview after they offered to leave. The court described the tone of questioning as "pleasant" and noted that the detectives did not threaten to arrest Hayes on gun charges. <u>See</u> <u>United States v. Axsom</u>, 289 F.3d 496, 501-02 (8th Cir. 2002) (finding an interview non-custodial where the defendant was friendly and cooperative during the interview and voluntarily acquiesced to questioning). While the detectives suggested they did not believe Hayes's story that the gun belonged to the intruder, they did not use deceptive questioning and "a reasonable person would expect diligent investigators to ask for clarification" when a witness's statements revealed inconsistencies. <u>Jamison</u>, 509 F.3d at 631; <u>see also</u> <u>United States v. Sanchez</u>, 676 F.3d 627, 631 (8th Cir. 2012) (noting assertions that investigators believe the defendant is lying are not impermissibly coercive interview tactics).

Hayes also argues that he was in custody during questioning because his freedom of movement was severely restricted by his hospitalization and because he

was recovering from surgery. The district court determined that even though Hayes was confined to his hospital bed and unable to walk out of the interview, he was not in custody. Because "[t]he sole concern of the Fifth Amendment . . . is governmental coercion," Colorado v. Connelly, 479 U.S. 157, 170 (1986), "[o]ur examination only relates to the restraint imposed by the [detectives]," Axsom, 289 F.3d at 503. Here, the detectives themselves placed no additional constraints on Hayes's movement during questioning. See United States v. New, 491 F.3d 369, 373-74 (8th Cir. 2007) (concluding agents did not restrict a defendant's freedom of movement when any physical restrictions were the result of the defendant's hospitalization and agents did not impose additional restraints); see also Jamison, 509 F.3d at 632 (concluding the defendant was not in custody where he "was primarily restrained not by the might of the police, but by his self-inflicted gunshot wound, the medical exigencies it created, and the investigation he initiated"). Because Hayes's immobility was caused by his medical exigencies and not by the detectives, his inability to move freely during the interview does not establish that Hayes was in custody.

Under these circumstances, a reasonable person would have felt free to terminate the questioning and ask the detectives to leave. Because Hayes was not in custody during the July 18 hospital interview, the district court did not err when it denied Hayes's motion to suppress his hospital statements to detectives.

### 2. *August 11 Police Station Interview*

Hayes next contends his statements to detectives at the police station on August 11 were not voluntary because detectives: (1) told him at the time that they were not seeking to prosecute him on a firearms charge; (2) threatened him with a murder investigation if he did not answer truthfully about how he came into possession of the gun; and (3) continued questioning him after he invoked his right to remain silent. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." LeBrun, 363 F.3d at 724. When determining voluntariness, courts examine "the totality of the circumstances,

-8-

including both the conduct of law enforcement in exerting pressure . . . on the defendant and the defendant's ability to resist that pressure." United States v. Sandell, 27 F.4th 625, 630 (8th Cir. 2022).

The detectives told Hayes they were not trying to "jam him up" on a gun charge and instead needed to know where the gun came from so they could understand why the intruder targeted Hayes's home. The district court concluded that the detectives' statements about not seeking to prosecute Hayes on a firearms charge were not so deceptive that they overcame Hayes's will and rendered his admissions involuntary. Admissions obtained by making false promises during questioning do not render subsequent admissions involuntary unless "the overall impact of the interrogation caused the defendant's will to be overborne." United States v. Boslau, 632 F.3d 422, 428-29 (8th Cir. 2011). "Thus, it is not enough to show that the authorities' representations were the but-for cause" of a defendant's admissions. LeBrun, 363 F.3d at 725.

Even assuming Hayes understood the detectives' statements as a promise, that promise failed to render Hayes's admissions involuntary. See United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005). At the time of questioning, detectives were merely trying to understand how Hayes came into possession of the gun used to kill a home intruder and determine whether the killing was murder or self-defense. Even though the detectives did eventually refer Hayes to federal prosecutors for possessing the gun as a felon, the district court found that considering the totality of the circumstances (". . . the relatively short length of the interrogation (an hour and half total) and Hayes's familiarity with the criminal justice system") the interrogation was not so coercive as to overbear Hayes's will. There is no error in this factual finding, clear or otherwise, and Hayes has failed to point to any significant evidence in the record to bring this factual finding into question on appeal.

The district court also found that Hayes's admissions were not rendered involuntary because the detectives suggested they would pursue a murder

investigation if Hayes did not tell them the truth about how he came into possession of the gun. In doing so, the district court noted that threatening a more thorough investigation is different and less concerning than threatening to bring specific charges, which this Court has said does not automatically render a suspect's admissions involuntary. See United States v. Williams, 793 F.3d 957, 963 (8th Cir. 2015) (threatening potential obstruction of justice charges did not automatically render a suspect's statements involuntary). As the district court recognized, at the time the detectives interviewed Hayes they had several theories about what had happened the night of the break-in. Given the inconsistencies in Hayes's statements about how he came into possession of the gun, investigating the incident as a homicide was not an impossibility. See Czichray, 378 F.3d at 829 ("It is appropriate for an investigator to advise a suspect of the potential course and consequences of a criminal investigation."). Under these circumstances, Hayes has not met his burden of showing that the detectives' statements about a murder investigation rendered his admissions involuntary.

Finally, Hayes challenges the district court's determination that he did not adequately invoke his Fifth Amendment right to remain silent. To invoke the right to remain silent and effectively cut off questioning, "a suspect must indicate 'a clear, consistent expression of a desire to remain silent.'" United States v. Adams, 820 F.3d 317, 323 (8th Cir. 2016) (quoting United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995)).

Hayes's statements that he wanted to "go home" if he was not being detained are the type of "[i]ndirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent" that "are not enough to invoke that right for the purposes of Miranda." United States v. Ferrer-Montoya, 483 F.3d 565, 569 (8th Cir. 2007). This Court has held that "a statement about wanting to go home" is not a clear refusal to talk further because "[t]he prospect of going home would naturally be of great interest to any suspect undergoing interrogation." United States v. Simpson, 44 F.4th 1093, 1097 (8th Cir. 2022). "That [Hayes] reiterated the wish many times does not transform his expression of a desire to be elsewhere into an

unambiguous assertion of the right to remain silent." Id. Even if Hayes had intended to invoke his right to remain silent, he continued talking with detectives for an additional 30 minutes, "never clarifying his earlier statement or otherwise unequivocally invoking his right to remain silent." Adams, 820 F.3d at 323. Under these circumstances, Hayes did not clearly and unambiguously invoke his Fifth Amendment right to remain silent and terminate questioning.

Accordingly, the district court did not err when it denied Hayes's motion to suppress.

## B. Substantive Reasonableness

Hayes contends his 90-month sentence is substantively unreasonable, but, in his conditional plea agreement, he waived the right to appeal any sentencing issue unless the sentence imposed exceeded the maximum statutory penalty or was imposed in violation of his plea agreement. "An appeal waiver requires dismissal of an appeal if the plea agreement and waiver were entered into knowingly and voluntarily, if the appeal falls within the scope of the waiver, and if dismissal of the appeal would not result in a miscarriage of justice." United States v. Scott, 627 F.3d 702, 704 (8th Cir. 2010) (citing United States v. Andis, 333 F.3d 886, 889-92 (8th Cir. 2003) (en banc)).

Hayes does not suggest that his appeal waiver was involuntary or unknowing. At the change-of-plea hearing, the district court informed Hayes that he was waiving all appeal rights except for the right to appeal the denial of his motion to suppress. Hayes acknowledged that he had reviewed the appeal waiver with his attorney and understood its scope and effect on his right to appeal. See United States v. Valencia, 829 F.3d 1007, 1011 (8th Cir. 2016) (stating appeal waiver is knowing and voluntary where the court ensures the defendant understands the waiver and discussed the plea agreement and its contents with his attorney). Nor would enforcing the appeal waiver result in a miscarriage of justice. See Andis, 333 F.3d at 892 (an allegation that the district court abused its sentencing discretion is not a miscarriage of justice).

Because we conclude Hayes waived his right to appeal the substantive reasonableness of his sentence, we dismiss that claim.

## III.   CONCLUSION

The district court's denial of Hayes's motion to suppress is affirmed.  Because Hayes waived his right to appeal his sentence, that claim is dismissed.

_____